Attached information



# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

**FILED: June 4th, 2024**
**Timely as Notification was only delivered via third Party in June 2023**

| | |
|---|---|
| TIMOTHY W. CARNAHAN<br><br>**PLAINTIFFS**<br><br>VS<br><br>SECURITIES AND EXCHANGE COMMISSION<br><br>**DEFENDANTS** | Case No. _____-CV-<br><br><br><br>**Complaint SEC** |

**NOW COME** Plaintiffs **Timothy W. Carnahan** respectfully seeks damages from the deprivation of life and liberty due to SEC lack of due process, lies and targeting. Seizing a Person or Property, Rule 65. Injunctions and Restraining Orders, Article I, Florida Constitution, Section 9, Due Process and Statue of Limitations 28 U.S.C. § 2462.26.

## JURISDICTION AND VENUE

1. This is a civil rights action, 42 U.S.C. § 1983 in which the Plaintiff seeks relief for the violation of their constitutional rights secured by Rule 64. Seizing a Person or Property, Rule 65. Injunctions and Restraining Orders, Rule 65.1. Proceedings Against a Security Provider, Article I, Florida Constitution, Section 9, Due Process and statute of limitations 28 U.S.C. § 2462.26.

2. Jurisdiction of this Court is found upon 28 U.S.C. § 1331.

Attached information

3. Venue is properly laid in the
   **Southern District of Florida**
   U.S. Federal Building and Courthouse
   299 East Broward Boulevard #108
   Fort Lauderdale, FL 33301
   under **28 U.S.C. § 1391(b)(2).**

4. The events that give rise to the below:
   **Administrative Proceeding File No. 3-16386**
   **SEC Securities and Exchange Commission,**
   **100 F Street NE,**
   **Washington, DC 20549.**

## PARTIES

5. **Plaintiff** Timothy W. Carnahan is a law binding citizen of the United States and resident of Pompano Beach, Florida.

6. Each and all the acts of the individual Defendants alleged herein were committed by said Defendants while acting within the scope of their employment or appointment by the **SEC Securities Exchange Commission**.

7. Each and all of the acts of the individual **defendants** were committed by Defendants knowingly, recklessly, intentionally, wantonly, callously, and/or with deliberate indifference and/or gross negligence.

8. Each and all of the herein complained of unlawful and unconstitutional acts of the individual law enforcement officials (SEC DOE – Division of Enforcement), were done despite their knowledge that they were engaging in unlawful and unconstitutional acts, and yet did them anyway knowingly, recklessly, intentionally, wantonly, callously, and/or with deliberate indifference and/or gross negligence.

Attached information

# Factual background

9. **SEC Enforcement created a false narrative --- read no more but this statement that unlawfully deprived me of life and liberty.**

10. DOE falsified evidence into the record to malign Carnahan and the filings about internal controls: It is undisputed that the Forms 10-K for fiscal years 2009, 2010, and 2011 stated that management had assessed the effectiveness of its ICFR using the COSO Framework and that ICFR was effective. From Filing 2011 10K/A
https://www.sec.gov/Archives/edgar/data/1091566/000109156612000007/10K A2012.htm Item 9A(T).
Controls and Procedures. (*** below was copied from this section***)

   **What DOE falsified is highlighted in the reference – Mr Carnahan stated that he used CRITERIA from COSO; SEC Enforcement CHANGED this and presented to the Judge that we USED fully the COSO framework; this is the basis of our complaint! The SEC Lied – for years, denied what today has been overturned through varies cases and took life and liberty. The SEC LIED – we want to set the record straight!**

   **Plus, the SEC Enforcement Targeted Mr. Carnahan! See attached with the SEC Robo Cop --- Targeted plus we have phone calls to supplement this.**

   A. What actually was stated is highlighted below B and is directly copied from our filings. B. ***We evaluated and assessed the effectiveness of our internal control over financial reporting as of December 31, 2007, using criteria set forth in the Internal Control— Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO).
   The Chief Executive Officer and Principal Financial Officer has also concluded, based on his evaluation of our controls and procedures that as of December 31, 2011, our internal controls over financial reporting are effective and provide a reasonable assurance of achieving their objective. The Chief Executive Officer and Principal Financial Officer has also concluded that there were no change in our internal controls over financial reporting identified in connection with the evaluation that occurred during our fourth fiscal quarter that has materially affected, or is reasonably likely

Attached information

> to materially affect, our internal control over financial reporting.*** 5 | P a g e Under Rule 13a-15(c), we use CYIPRO based upon "criteria set forth in COSO" and have stated it over and over again but this is a pattern of the DOE to "falsify" evidence and the record and the ALJ has relied upon this evidence as the "Preponderance of Evidence" not only in the initial decision ID but throughout this administrative proceeding.

11. **Plaintiff Timothy W. Carnahan** email during the SEC investigation showing proof of the software is ISO 9000:2008 compliant as one recognized control frameworks used for ICFR. See the attached (**Exhibit A**) (Continuous_Process_Improvement_Support.docx) that was in the said email below.
Date Sent: Monday, August 25, 2014 2:28:25 PM Sent From: "Timothy Carnahan" <carnahan@cyios.com> Sent To: "King, David R." <KingDR@SEC.GOV> Sent CC: "McGuire, Margaret S." <MCGUIREM@SEC.GOV>, "Peavler, David L." <PeavlerD@SEC.GOV>, "Woodcock, David R." <WoodcockD@SEC.GOV> Subject: RE: Re: CYIOS Corporation (FW-3921) Attachments:
**[Continuous_Process_Improvement_Support.docx]**
David,

A. From my earlier email, I've attached how the processes (ME, MYSELF and I) created to run CYIOS (CYIO).

A.1 These processes to ALL of the invoicing and payroll that are incorporated into our SEC filings. Traci is more or less a bookkeeper in her capacity as a contractor. Our website has many purposes --- none have been formally deemed for use for our shareholders. Please see 2008 SEC guidance on use and historical factors.

A.2 Please read as all my "Internal Controls" related to financial reports are covered through my automation of the processes.

B. My claim is that the SEC failed to evaluate these processes and further ignored my testimony; thus coming to the wrong conclusions.

B.1 I also claim the SEC failed to evaluate under the 2008 guidance --- http://www.sec.gov/news/press/2008/2008-158.htm

Attached information

B.2 My "MAJOR" concern is that the SEC actions have cause a "Hardship" on the company.

C. As for the "Late filings", we received a letter from SEC about our filings, we talked about our situation and the SEC was fine with our form 15 filed May 2014.
My intent is to resolve any concerns as needed immediately, please advise when we can have our next conversation.
Vr, Tim: _____
Timothy W. Carnahan
CEO CYIOS Corporation Ronald Reagan Building 1300 Pennsylvania Ave,700 Washington,20004
powered by www.cyipro.com

## Email response from SEC:

From: "King, David R." <KingDR@SEC.GOV> Date Sent: 8/25/2014 5:15:58 PM To: "Timothy W. Carnahan" <carnahan@cyios.com> CC: "McGuire, Margaret S." <MCGUIREM@SEC.GOV>, "Peavler, David L." <PeavlerD@SEC.GOV>, "Woodcock, David R." <WoodcockD@SEC.GOV> Subject: RE: Re: CYIOS Corporation (FW-3921)

Mr. Carnahan,

We will consider the material you provided and will get back to you to propose times that we can discuss this matter.

David R. King, CPA
U. S. Securities and Exchange Commission
Enforcement Division

12. After losing merger in June 2014 due to this SEC investigation, later February 13th, 2015 the defendant SEC filed OIP – Order Instituting Administrative and Cease-and-Desist Proceedings #33-9725.

13. **Plaintiff Timothy W. Carnahan** fought this OIP and on December 21st, 2015 the defendant SEC release the (ID) Initial Decision. The ID dismissed the SOX violations in part. **Plaintiff Timothy W. Carnahan**

Attached information

appealed and on February 2, 2016 33-10031 and appeal was granted 33-100-31.

14. **Plaintiff Timothy W. Carnahan** fought the appeal and final brief was filed July 11th, 2016. Plaintiff waited for the final decision, but it never came, under SEC Rule 900 a decision should be made within (7) months; 2006 Rules of Practice.

15. **Defendants failed** to meet SEC Rule 900 (2006 rules of practice) deadline to decide.

16. The defendant SEC commission vacated the original ID Initial Decision on November 29th, 2017.

17. On December 7th, 2017, an Order from defendant SEC to remand our case for a new hearing based upon the November 29th Supreme Court hearing about the SEC ALJs (administrative law judges).

18. The Defendant's ordered an ID (Initial Decision) January 10th, 2020; the Plaintiffs have the right to petition the SEC Commission for a review of this ID.

Attached information

# Arguments

**19.   Ambiguous process – Violation of Due process.**

The defendants SEC filed in the OIP February 13th, 2015 against the plaintiff that the statement on the filed 10K report was false. The SEC claimed that software used for "ICFR" should have caught the SOX violation, since it did not, ICFR are weak. But, December 2015, the SEC dropped the SOX violation thus the SEC argument should be a moot point.

The Plaintiff's appealed February 2, 2016 33-10031 and filed their final brief July 11th, 2016. Plaintiffs waited for the final decision, but it never came. Plaintiffs feel their Right to Due process was violated by Rule 900 of Securities and Exchange Commission rules of practice. Rule 900 – Informal Procedures and Supplementary Information Concerning Adjudicatory Proceedings of the securities and exchange commission states a decision must be made within at the latest 7 seven months. No decision was made. Moreover, according to the referred case law Rory C. Flynn vs SEC No. 16-2122, the SEC has historically used this Rule 900 **in violation of due process rights** of other Plaintiffs, now we are victims of this abuse. For over 16 months, the SEC Commission could have easily issued Final Decision – but they failed to do so under rule 900.

November 2017, the case was then remanded for a new hearing due to the case about the appointment of SEC ALJ, (*Raymond J. Lucia and Raymond J. Lucia Companies, Inc. v. Securities and Exchange Commission (No. 17-130)*).

*On remand,* the SEC states that the ICFR are weak because it is not a "known" government recognized framework. The plaintiff debunked this with the email and attachment (**Exhibit A**) provided in evidence 2014 June, that mapped CYIPRO's processes to ISO 9000:2008 standard recognized throughout the government and internationally. Furthermore, the required 10K PCAOB audits have never found any deficiencies with our software or with any filing ever as required by law 7 CFR § 1773.32 - Report on internal control over financial reporting and on compliance and other matters. SEC finds no fraud and no defects with any 10K filings; the Plaintiffs conclude they are fighting a host of excuses made

Attached information

up by the SEC; we can't defend something that does not exist. Our due process rights were violated.

20. **We asked for this but was denied : Right of injunction due to time barred under statute of limitations 28 U.S.C. § 2462.**

The plaintiff has the right to get a permanent injunction because after a long time waiting and no decision was made this case should be dismissed in the summer of 2016. The plaintiff used this software for SEC 10K filings starting 2005 and never faced such situations. The defendants are just disturbing the plaintiff by this shameful and time-wasting act. Now, the plaintiff fights this case again and this is totally against the statute of limitations and time bars. A very ambiguous process which we feel is a violation of our due process. Based upon the Supreme Court ruling in the SEC v. Kokesh, No. 15-2087 (10 Cir. Decided March 5, 2018) time should bar any action from the SEC due to the "Statue of Limitations" this case should be dismissed through permanent injunction. 28 U.S.C. § 2462 bars the government from bringing suit to enforce "any civil fine, penalty, or forfeiture" after five years from when the claim **first accrues**.

In resolving the question of when the statute begins to run the Supreme Court focused on the phrase "**first accrues**" from the statute. In view of this language section 2462 "begins only once, when a claim first accrues." (emphasis original). In view of these words the statute cannot reset each day because the concept of "first" would "have no operative" force, the Supreme Court found in the SEC v. Kokesh, No. 15-2087 (10 Cir. Decided March 5, 2018). Again, "**first accrued**" **is 2005** which is 10 years from the original OIP filed February 13th, 2015; in addition to the time being barred, the plaintiffs have given all the evidence that all statements on all our filings are true contrary to the SEC claim in this case is that a statement in our filing is false and the defendants have provided no proof of otherwise.

21. **Notwithstanding the above**, being remanded based upon the defendant's error alone (December 7th, 2017) and brought to hearing over 10 years from the events in question reinforce the statute of limitations barring any action or enforcement from the SEC under 28 U.S.C. § 2462.

Attached information

The defendant SEC commission vacated the original hearing in November 29th, 2017. The plaintiffs fought this with the argument that the statue of limitations bars any action from the SEC, and it is clearly beyond five years but this argument fell upon death ears and blind eyes.

Today, the plaintiff's only remedy is to petition the SEC Commission for review of the January 10th, 2020 ID from the SEC ALJ. Moreover, on appeal, the Commission's standard of review is *de novo*. It has broad discretion not only to consider the ALJ's findings and conclusions, but also to make its own independent determinations and interpretation of the evidence offered during the proceedings.

Historically, we fall into the same "Due Process violation" because of ambiguity with Rule 900; moreover, the ID filed January 10th, 2020 failed to meet the SEC Rule 360 on timeliness. While the defendants filed motion to the SEC ALJ to dismiss based upon this failure to comply with the Rule 360, the ALJ refused to rule on this issue.

Attached information

**Prayer:**

Nobody can afford to fight the US Government – but we have to put our foot down when it is totally destructive. The Plaintiffs have the right to appeal the ID but as the record shows we have already suffered losses over the past six (9) years, loss of a product that was ahead of its times before COVID ---- the court should hold the SEC Enforcement accountable – hire an contractor to show that our claim for over 100 M is appropriate and warranted.

Jury Trial

Attached information

## PLAINTIFF VERIFICATION:

**Whereof, I Timothy W. Carnahan** do here by verify on oath that whatever has been stated from paragraph # **1 to 26** are true and correct to best of my knowledge and all legal references and paragraph are true and correct to the best of my information.

**PLAINTIFF'S NAME**
**Timothy W. Carnahan**
**2637 E Atlantic Blvd #1324**
**Pompano Beach, FL 33062**
**2023691984**
**carnahan@carnahanfamily.org**
**June 4th 2024**

X _____

Attached information

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served to parties of record on the Service List below.

Office of the Secretary
100 F Street, NE
Washington, DC 20549
Mailed Hard Copy
Fax: 703-813-9793

Timothy W. Carnahan,
2637 E Atlantic Blvd #26190
Pompano Beach, FL 33062
carnahan@carnahanfamily.org


Respectfully,
Timothy W. Carnahan
June 4, 2024

X _[signature]_

Attached information

SEC's 'RoboCop' Drags Agency Into 21st Century
By Stephanie Russell-Kraft
Law360, New York (August 21, 2015, 8:28 PM ET) -- Famously and perhaps erroneously dubbed a financial "RoboCop" when it was first revealed, the U.S. Securities and Exchange Commission's sophisticated tool to root out accounting fraud has quietly grown over the last two years to become an integral part of the agency's investigative and enforcement efforts, helping to drag the once-outdated agency into the 21st century.
 The seed of the Accounting Quality Model, which was given the moniker by the financial and legal press for its ability to automatically flag potentially problematic issuers, came from academic earnings-quality models that were decades old, but the push to develop it came from within the SEC's division of economic and risk analysis, which was created in 2009 to step up the agency's data analytics game.
 As the fervor over the model has died down, the FRAud Group's focus on accounting metrics has led the agency's economists and coders to develop an even more comprehensive detection tool: the Corporate Issuer Risk Assessment program, or CIRA, which now allows certain SEC staff members to access over a hundred custom metrics from one dashboard.
 "The change in how the agency uses data from the time I was there to the time I left was just shocking to me," said David Woodcock, who left the task force as it became a permanent group within the SEC this spring. "You went from a world of Excel spreadsheets to supercomputers."
 While the FRAud Group's work may still be flying under the radar — due in large part to length of the investigative life cycle — the technological prowess it has spurred continues to grow exponentially, according to Woodcock, now a partner at Jones Day.
 The change has largely come from the increased funding and promoting of data analytics at the agency, according to Woodcock, who said the story of the financial fraud and auditing group can't be written without the division.
 But the CIRA program, which has spawned the production of similar tools in other departments, has been largely driven by the goals of the FRAud Group, according to division deputy director Scott W. Bauguess.
 "They're the biggest innovators in this space, so most of the current features have been designed at their request," he said.
 According to Woodcock, many people "would have laughed at" an accounting task force in 2009 because of everything else that was on the agency's plate at the time. But as the financial crisis began to recede, the agency turned back to its bread and butter: catching and stopping accounting fraud.

Attached information

When the financial reporting and audit group was first established under the name FRAud Task Force, its goal was not to bring any cases on its own. Its approximately 16 lawyers and accountants were tasked with identifying potential cases of wrongdoing and then passing them along to enforcement staff members for further investigation.

But the group's reach has already grown bigger than planned.

In February, the FRAud Group filed its first enforcement action against defense contractor Cyios Corp, its CFO Traci J. Anderson and sole director Timothy W. Carnahan.

"We would have farmed it out like we do other referrals, but because we thought we could do it quickly it made sense to do it on our own," Woodcock said of the charges.

The SEC claims that the firm failed to make periodic filings, that Anderson violated a Public Company Accounting Oversight Board order barring her from associating with a public accounting firm, and that Carnahan failed to assess the company's internal controls. A hearing for all three defendants is set to begin before an administrative judge on Sept. 2.

Margaret McGuire, who took over the group after Woodcock's departure, said the Cyios case is likely to remain an exception rather than the new rule.

"Our mission is to identify matters worthy of investigation, rather than conduct the investigation," she said.

Since it was first set up, the FRAud Group has also reorganized. The team now has fewer core members but also counts about 35 enforcement liaisons spread out among the agency's regional offices.

In total, approximately 50 staff members now have access to CIRA, a tool that is rapidly gaining prominence within the agency.

The tool's interface allows users to pull up, at the click of a mouse, combined data from financial statements, corporate reports, auditors, third-party databases, market data and XPRL data, according to Bauguess.

"It basically serves as instant corroboration to thoughts or ideas they may have," he said. "If a tip or referral comes in on an issuer, an investigative staff can look at what CIRA says and can see maybe that their earnings management measure is off the charts, or that they have other red flags corroborating the complaint."

CIRA, along with the group's growing liaison team, has allowed the FRAud Group to increase both the number and depth of its investigations, McGuire said.

Attached information

"Staff can spend all of that saved time to really dig into the details, conduct expert analysis, and look closely at more issuers and auditors, more financial reporting issues, and more filings," she said.

Although the SEC initially brushed off the term RoboCop as a silly name for its accounting quality model, the latest version has become far more sophisticated than originally planned, according to Woodcock, who expects the technology to only increase in sophistication in the coming years.

He also expects that the agency will continue to keep quiet about the inner workings of its data mining tools.

"For companies and those on the outside, there will always be an element that is black box," he said.

But the hope, according to Woodcock, is that tools like CIRA will allow staff members to detect financial fraud earlier and earlier, to prevent the next Enron or WorldCom from happening altogether.

"I think the agency is going to become incredibly good at finding those companies that are doing something wrong," Woodcock said. "It was really getting very good, frankly. Better than I thought it would."

--Editing by Jeremy Barker and Emily Kokoll.